James C. Shah (SBN 260435)
Kolin C. Tang (SBN 279834)
MILLER SHAH LLP
19712 MacArthur Blvd.
Irvine, CA 92612
Telephone: 866-540-5505
Facsimile: 866-300-7367
Email: jcshah@millershah.com
kctang@millershah.com

*Counsel for Plaintiff Andrew Dressler*
[Additional Counsel on Following Page]

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ANDREW DRESSLER, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>NEWEGG, INC.,<br><br>Defendant. | Case No. 2:21-cv-06303<br><br>CLASS ACTION COMPLAINT |

1. Plaintiff Andrew Dressler brings this action against Newegg, Inc. ("Newegg" or "Defendant"), to secure redress for its sending numerous nonconsensual, automated text message calls to the cellular telephone numbers of Plaintiff and others, in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.

2. Newegg continued to send Plaintiff automated marketing texts even though it had received and processed multiple demands from Plaintiff to stop the texts.

**INTRODUCTION**

3. Advancements in telephone dialing technology by the 1980s and 90s made reaching a large number of consumers by telephone easier and more cost-effective.

However, this technology also brought with it an onslaught of unsolicited robocalls, spam text messages, and junk faxes that intrude on individual privacy and waste consumer time and money. As a result, the federal government and numerous states have enacted legislation to combat these widespread abuses. See Mims v. Arrow Fin. Servs., LLC, 565 U.S. 368, 371 (2012) (noting that federal legislation – the TCPA – was enacted after Congress found that callers, "by operating interstate, were escaping state-law prohibitions on intrusive nuisance calls").

4. As Congress recognized:

> Many customers are outraged over the proliferation of intrusive, nuisance calls to their homes…. Banning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the only effective means of protecting telephone consumers from this nuisance and privacy invasion.

Pub. L. No. 102-243, 105 Stat. 2394 § 2(6, 12) (1991).

5. As is relevant here, the TCPA provides that "[n]o person or entity shall initiate any telephone solicitation to ... [a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government." 47 C.F.R. § 64.1200(c)(2).

6. The TCPA further prohibits "initiat[ing] any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity[.]" 47 C.F.R. § 64.1200(d).

7. The TCPA also prohibits "mak[ing] any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system . . . to any telephone number assigned to a . . . cellular telephone service[.]" 47 U.S.C. § 227(b)(1)(A)(iii).

8. Text messages are "calls" under the TCPA. In re Rules & Regs. Implementing the TCPA, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

9. The TCPA provides for injunctive relief and the greater of actual damages or $500 per violation, which can be trebled where the statute was "willfully or knowingly" violated. 47 U.S.C. § 227(b)(3).

10. Newegg, Inc., which operates primarily through its website (newegg.com) caused multiple, unauthorized, autodialed text message calls to be made to Plaintiff's cell phone, causing Plaintiff aggravation and inconvenience. Plaintiff files this class action complaint on behalf of himself and others similarly situated, seeking relief from these illegal calling practices.

**JURISDICTION AND VENUE**

11. This Court has federal question subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 with respect to Plaintiff's TCPA claims. Mims, 565 U.S. at 372.

12. Additionally, the Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d)(2). The matter in controversy exceeds $5,000,000 in the aggregate, exclusive of interest and costs, as each member of the proposed Class consisting of, upon information and belief, at least tens of thousands of individuals is entitled to up to $1,500 in statutory damages for each call that has violated the TCPA. Further, Plaintiff alleges a nationwide class, which will result in at least one Class member residing in a state different from Defendant.

13. Venue is appropriate in this District under 28 U.S.C. § 1391(a) because Newegg is based here, and because a substantial portion of the events giving rise to this cause of action occurred in this District.

## PARTIES

14. Plaintiff is a natural person and a citizen of the State of California, who resides in Folsom, California. At all relevant times, Plaintiff was the subscriber for the cellular telephone at issue. Plaintiff's cellular telephone number has been on the National Do Not Call Registry since approximately 2006.

15. Newegg, founded in 2001, began by selling PC components and helped popularize the PC-building movement. Newegg has diversified since and now is the leading tech-focused e-retailer in North America. Newegg also has a global reach in Europe, South America, Asia Pacific and the Middle East. According to its website, "millions of customers turn to Newegg to shop for the latest PC components, consumer electronics, smart home and gaming products. Newegg is consistently ranked as one of the best online shopping destinations, and the company regularly earns industry-leading customer service ratings."[1] Newegg is headquartered in City of Industry, California.

## FACTS

16. Because Plaintiff was interested in purchasing certain high-demand technology items from Newegg, he registered for Newegg's Newegg Shuffle marketing program in April 2021. Newegg.com describes its Newegg Shuffle program as "[o]ur drawing system to purchase in-demand products on Newegg.com that are currently limited in supply. Our Newegg Shuffle can be found at www.newegg.com/shuffle."[2]

17. Soon thereafter, Plaintiff received multiple text messages alerting him to the start times for certain Newegg Shuffle marketing events.

18. Plaintiff participated in several Newegg Shuffle events; however, each time he participated in the drawing system, he was unsuccessful.

19. Following these unsuccessful attempts and after receiving texts from Newegg for five consecutive days, Plaintiff texted Newegg to "STOP" sending texts to

[1] https://www.newegg.com/corporate/about (last accessed on July 30, 2021).

[2] https://kb.newegg.com/knowledge-base/newegg-shuffle-faq/ (last accessed on July 30, 2021).

his cell phone. Below is the screen shot from Plaintiff's cell phone documenting his "STOP" command.




20. Newegg received, understood and processed Plaintiff's requests to stop. Soon after texting his "STOP" command, Newegg responded with two repetitive and identical texts indicating that it would stop sending texts to Plaintiff. Below is the screen shot from Plaintiff's cell phone documenting Newegg's response:

21. Unfortunately, as evidenced by the above screen shot, Newegg did not actually stop sending texts to Plaintiff following Plaintiff's initial "STOP" command.

22. Instead, Newegg kept texting marketing messages. Plaintiff received three more such texts between May 3, 2021 and May 5, 2021.

23. So, on May 5, 2021, Plaintiff again texted Newegg to "STOP" sending texts to his cell phone. This is evidenced by the below screen shot from Plaintiff's cell phone.




24. As demonstrated by the above screen shot, Newegg again responded to Plaintiff's "STOP" command with two identical and repetitive texts stating Newegg would stop sending texts to Plaintiff's cell phone.

25. But, Newegg did not stop sending texts to Plaintiff's cell phone. Newegg sent another marketing text on May 7, 2021 (see above screen shot).

26. In response to this unwanted text, Plaintiff texted Newegg to "STOP" sending texts to his cell phone for a third time in five days (see above screen shot, bottom right corner).

27. Newegg responded with the same two repetitive and identical texts declaring that Newegg will stop texting Plaintiff.




28. However, as the above screen shot of Plaintiff's cell phone demonstrates, Newegg sent another unwanted marketing text on May 11, 2021.

29. For the fourth time, Plaintiff texted Newegg to "STOP" sending texts to his cell phone.

30. And, Newegg responded that it would stop sending texts to Plaintiff.

31. But, Newegg did not stop texting Plaintiff, as Newegg has sent several additional texts to Plaintiff's cell phone, three of which are demonstrated by the below screen shot.

32. Newegg did not have Plaintiff's consent to send at least nine of the texts documented above.

33. Newegg sent additional unauthorized marketing texts to Plaintiff's cell phone, including as recently as June 3, 2021.

34. Newegg knew it did not have consent, and knows it currently does not have consent, to send these messages because Newegg previously received Plaintiff's repeated "STOP" commands and acknowledged such receipt by sending additional texts to Plaintiff responding that it would not send additional texts to him.

35. Within the four years prior to the filing of this action, Newegg caused autodialed text message calls to be made repeatedly to the cell phones of Plaintiff and other consumers nationwide, without the prior express consent of the called party or after the called party expressly requested that Newegg "STOP" sending texts.

36. In fact, the texts Newegg sent Plaintiff was a form of communication that it also sent to thousands of consumers with identical or substantially identical verbiage at the same time.

37. Newegg caused the text message calls at issue to be made using an automatic telephone dialing system, as that term is used in the TCPA

38. Newegg's use of a short message service (SMS) short codes — e.g., 639344 located at the top of each screen shot above — demonstrates that these text messages were sent using an automatic telephone dialing system, as opposed to being a traditional, manually-dialed text message call from a "regular" telephone.

39. Many of Newegg's text messages – including those that Plaintiff received – are identical across all call recipients. However, even where there are minute differences between messages, this is a result of the sophisticated, automated nature of Newegg's autodialer systems, and does not reflect that these calls were "manually" dialed. Specifically, in those instances, Newegg's dialing system automatically populates a generic message template with information its system attributes to the particular phone number it intendeds to contact. The system then populates specific data into the template – similar to a mail merge – then automatically sends these text messages out en masse.

40. The equipment used to call Plaintiff and others not only had the capacity

to store or produce telephone numbers to be called using a random or sequential number generator (and to dial such numbers), but was programmed to sequentially or randomly access stored telephone numbers to automatically call such numbers when it made the calls to plaintiff and the class. These calls were made with equipment capable of dialing numerous phone numbers in a short period of time without human intervention, as part of an automated process.

41. The equipment Newegg used had the capacity to store or produce telephone numbers to be called using a random or sequential number generator, and to dial such numbers. In other words, no human being physically dialed each digit of Plaintiff's and the other class members' telephone numbers to call their phones—the calls were made automatically pursuant to a computer program that was programmed to automatically decide what phone numbers to call when, and what content to send.

42. The autodialer accessed a dataset – a preproduced list - of Defendant, sorted through that dataset to determine which data to use to generate a list of numbers to call, used a random or sequential number generator to create a brand-new sequence for calling those numbers based upon complex algorithms, stored those numbers and then called the numbers. The autodialer sequentially generated phone numbers for calling from that dataset, stored those numbers, and then automatically called those numbers.

43. These violations were negligent. Alternatively, Newegg made these calls to Plaintiff and the other members of the class defined below intentionally. Defendant was well aware of the TCPA's prohibitions against use of autodialers in calls to consumers, but made the business decision to send these text messages, anyway.

44. Upon information and belief, Newegg or its vendors keep records and data from which it can determine which autodialed text message calls were made without consent.

45. Plaintiff and the class have been damaged by these calls. Their privacy was improperly invaded, Defendant's calls temporarily seized and trespassed upon the use of their phones, and they were forced to divert attention away from other activities to address the text messages. Defendant's text messages were annoying and a nuisance and wasted the time of Plaintiff and the class. *See, e.g., Mims*, 565 U.S. at 372 (discussing congressional findings of consumer "outrage" as to autodialed calls).

**Class Action Allegations**

46. Plaintiff brings this action on behalf a class, defined as follows:

> DNC Class. For the period of time four years prior to the filing of this Complaint and thereafter, all persons in the United States whose cellular telephone number Newegg or someone on its behalf sent two or more marketing text messages within a 12-month period, where at least one text was sent after a request to stop texts.

47. Plaintiff alleges a subclass of persons who had been on the National Do Not Call Registry at least 31 days, when at least two texts were sent.

> Robotext Subclass. For the period of time four years prior to the filing of this Complaint and thereafter, all persons in the United States whose cellular telephone number Newegg or someone on its behalf sent a text message using the same or similar system as was used to text Plaintiff, after a request to stop texts.

48. Excluded from the class are Defendant, its officers, employees, and attorneys, and the Court.

49. Based upon the automated nature of the messages at issue, it is reasonable to infer that Defendant placed thousands of such messages in the four years leading up to this case.

50. Common questions of law or fact exist as to all members of the class, which predominate over any questions solely affecting any individual member, including Plaintiff. Such questions common to the class include but are not limited to:

a. Whether Defendant had proper permission to make the text message calls to Plaintiff and the class; and

b. Damages, including whether any violations were performed willfully or knowingly such that Plaintiff and the other members of the class are entitled to treble damages under 47 U.S.C. §§ 227(c)(5) and/or 47 U.S.C. § 227(b)(3).

51. Plaintiff's claims are typical of the claims of the other members of the class. The factual and legal bases of Defendant's liability to Plaintiff and the other members of the class are the same: Defendant violated the TCPA by causing autodialed text message calls to be made to the cellular telephone number of each member of the class, without permission.

52. Plaintiff will fairly and adequately protect the interests of the class. Plaintiff has no interests that might conflict with the interests of the class. Plaintiff is interested in pursuing his claims vigorously, and he has retained counsel competent and experienced in class and complex litigation, including with regards to the claims alleged herein.

53. Class action treatment is superior to the alternatives for the fair and efficient adjudication of the controversy alleged herein. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would entail. There are, on information and belief, tens of thousands of class members, such that joinder of all members is impracticable.

54. No difficulties are likely to be encountered in the management of this action that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of this controversy.

55. Defendant has acted and failed to act on grounds generally applicable to Plaintiff and the other members of the class, thereby making relief appropriate with respect to the class as a whole. Prosecution of separate actions by individual members

of the class, should they even realize that their rights have been violated, would likely create the risk of inconsistent or varying adjudications with respect to individual members of the class that would establish incompatible standards of conduct.

56. The identity of the class is, on information and belief, readily identifiable from Defendant's records.

**COUNT I**
**Violations of the TCPA, 47 U.S.C. § 227(c)**
**(Internal Do Not Call)**

57. Plaintiff re-alleges and incorporates all foregoing allegations.

58. Persons who engage in telemarketing – or who have others telemarket on their behalf – are required to have policies, processes and procedures in place that ensure that requests not to receive additional marketing calls or texts are honored. 47 C.F.R. §64.1200(d).

59. Defendant did not have a proper policy, process or procedure in place with regard to honoring requests that calls stop, such that Plaintiff and the class received texts after demands that they stop. Alternative, Defendant did not follow whatever policy, process or procedure it had in place, such that Plaintiff and the class received texts after demands that they stop.

60. Companies that do telemarketing are required to honor requests to stop calling as soon as practicable, and in no event later than 30 days after a request to stop. Newegg's do not call process was fully-automated and capable of ceasing texts immediately, but was improperly programmed not to do so.

61. These rules apply to both traditional phone calls, and text messages. 47 C.F.R. §64.1200(e); In Re TCPA, 18 F.C.C.R. 14014, 14115 (Jul. 3, 2003).

62. A cause of action accrues where there have been two or more calls or texts within a twelve-month period.

63. Defendant violated the TCPA when it made the calls alleged herein.

64. As a result of Defendant's conduct, and pursuant to Section 227(c)(5) of the TCPA, Plaintiff and the other members of the class were harmed and are each entitled to up to $500 in damages for each violation.

65. Moreover, given the facts and circumstances here, including that Defendant responded to Plaintiff's multiple "STOP" commands indicating that it would no longer text Plaintiff, it is apparent that injunctive relief is necessary to wrench compliance. Plaintiff and the class therefore request an injunction against future automated calls such as those at issue here, pursuant to 47 U.S.C. § 227(c)(5).

66. Because Defendant knew or should have known that neither Plaintiff nor the class consented to receive these text messages to their cell phones—and/or willfully caused such text message calls to be made to the cell phones of Plaintiff and the other members of the class without their express consent—the Court should treble the amount of statutory damages available to Plaintiff and the other members of the class, pursuant to § 227(c)(5) of the TCPA. Krakauer v. Dish Network LLC, 925 F.3d 643, 661-62 (4th Cir. 2019) (affirming treble TCPA damages after $21M jury verdict in favor of class).

67. Plaintiff, individually and on behalf of the class, respectfully requests that the Court enter judgment against Defendant for:

A. Certification of the class as alleged herein;

B. A declaration that Defendant violated the TCPA as to Plaintiff and the class;

C. Injunctive relief aimed at preventing these future automated calls to plaintiff's and the class' cell phones, after a request to stop;

D. Damages pursuant to 47 U.S.C. § 227(b)(3);

E. Costs, expenses, and attorneys' fees, to the extent permitted by law; and

F. Such other or further relief as the Court deems just and proper.

**COUNT II**
**Violations of the TCPA, 47 U.S.C. § 227(c)**
**(Do Not Call Registry)**

68. Plaintiff re-alleges and incorporates all foregoing allegations.

69. Persons who engage in telemarketing to phone numbers that are on the National Do Not Call Registry are required to honor requests to stop calling immediately, regardless of whether the parties continue their relationship with one another.

70. A cause of action accrues where there have been two or more such calls or texts within a twelve-month period.

71. Defendant violated the TCPA when it made the calls alleged herein, after Plaintiff and the class members requested that they stop.

72. As a result of Defendant's conduct, and pursuant to Section 227(c)(5) of the TCPA, Plaintiff and the other members of the class were harmed and are each entitled to up to $500 in damages for each violation.

73. These calls were made to persons who did not consent to receive those texts from Defendant.

74. Defendant violated the TCPA when it made the calls alleged herein.

75. Because Defendant knew or should have known that neither Plaintiff nor the class consented to receive these text messages to their cell phones—and/or willfully caused such text message calls to be made to the cell phones of Plaintiff and the other members of the class without their express consent—the Court should treble the amount of statutory damages available to Plaintiff and the other members of the class, pursuant to Section 227(b)(3) of the TCPA. Krakauer v. Dish Network LLC, 925 F.3d 643, 661-62 (4th Cir. 2019) (affirming treble TCPA damages after $21M jury verdict in favor of class).

76. Plaintiff, individually and on behalf of the class, respectfully requests that the Court enter judgment against Defendant for:

A. Certification of the class as alleged herein;

B. A declaration that Defendant violated the TCPA as to Plaintiff and the class;

C. Injunctive relief aimed at preventing these future automated calls to plaintiff's and the class' cell phones;

D. Damages pursuant to 47 U.S.C. § 227(c)(5);

E. Costs, expenses, and attorneys' fees, to the extent permitted by law; and

F. Such other or further relief as the Court deems just and proper.

**COUNT III**
**Violations of the TCPA, 47 U.S.C. § 227(b)**
**(Autodialed Call Violations)**

77. Plaintiff re-alleges and incorporates all foregoing allegations.

78. It is a violation of the TCPA to make "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system … to any telephone number assigned to a . . . cellular telephone service . . . ." 47 U.S.C. § 227(b)(1)(A)(iii).

79. A text message is a "call" under the TCPA. Satterfield v. Simon & Schuster, Inc., 569 F.3d 946, 951 (9th Cir. 2009).

80. Defendant initiated or caused to be initiated text message calls to the cellular telephone numbers of Plaintiff and the other members of the class using an automatic telephone dialing system.

81. These calls were made to persons who did not consent to receive those texts from Defendant.

82. Defendant violated the TCPA when it made the calls alleged herein.

83. As a result of Defendant's conduct, and pursuant to Section 227(b)(3) of the TCPA, Plaintiff and the other members of the class were harmed and are each entitled to a minimum of $500 in damages for each violation.

84. Moreover, given the facts and circumstances here, including that Defendant responded to Plaintiff's multiple "STOP" commands indicating that it would no longer text Plaintiff, it is apparent that injunctive relief is necessary to wrench compliance. Plaintiff and the class therefore request an injunction against future automated calls such as those at issue here, pursuant to 47 U.S.C. § 227(b)(3).

85. Because Defendant knew or should have known that neither Plaintiff nor the class consented to receive these text messages to their cell phones—and/or willfully caused such text message calls to be made to the cell phones of Plaintiff and the other members of the class without their express consent—the Court should treble the amount of statutory damages available to Plaintiff and the other members of the class, pursuant to Section 227(b)(3) of the TCPA. Krakauer v. Dish Network LLC, 2017 WL 2242952 (M.D.N.C. May 22, 2017) (trebling TCPA damages after $21M jury verdict in favor of class).

86. Plaintiff, individually and on behalf of the class, respectfully requests that the Court enter judgment against Defendant for:

A. Certification of the class as alleged herein;

B. A declaration that Defendant violated the TCPA as to Plaintiff and the class;

C. Injunctive relief aimed at preventing these future automated calls to plaintiff's and the class' cell phones;

D. Damages pursuant to 47 U.S.C. § 227(b)(3);

E. Costs, expenses, and attorneys' fees, to the extent permitted by law; and

F. Such other or further relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff requests a trial by jury of all claims that can be so tried.

Dated: August 4, 2021

Respectfully submitted,

By: *_/s/ Kolin C. Tang_*
James C. Shah (SBN 260435)
Kolin C. Tang (SBN 279834)
MILLER SHAH LLP
19712 MacArthur Blvd.
Irvine, CA 92612
Telephone: 866-540-5505
Facsimile: 866-300-7367
Email: jcshah@millershah.com
kctang@millershah.com

Jeffrey Goldenberg (pro hac vice to be filed)
GOLDENBERG SCHNEIDER, LPA
4445 Lake Forest Drive, Suite 490
Cincinnati, OH 45242
Telephone: 513-345-8297
Email: jgoldenberg@gs-legal.com

Joseph Lyon (pro hac vice to be filed)
THE LYON FIRM
2021 Auburn Avenue
Cincinnati, OH 45219
Telephone: 513-381-2333
Facsimile: 513-766-9011
Email: jlyon@thelyonfirm.com

Alexander H. Burke (pro hac vice to be filed)
Dan Marovitch (pro hac vice to be filed)
BURKE LAW OFFICES, LLC
909 Davis St., Suite 500
Evanston, IL 60201
Telephone: (312) 729-5288
Facsimile: (312) 729-5289
Email: ABurke@BurkeLawLLC.com

**Attorneys for Plaintiff**